J-S34043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE WILLIAMS, | |
| Appellant | No. 1417 EDA 2016 |

Appeal from the PCRA Order April 22, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0006521-2008

BEFORE: BOWES, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                           **FILED JULY 24, 2017**

Appellant, George Williams, appeals from the order of April 22, 2016, which dismissed, without a hearing, his first counseled petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We take the underlying facts and procedural history in this matter from this Court's December 3, 2012 opinion on direct appeal, the PCRA court's June 27, 2016 opinion, and our independent review of the certified record.

> Appellant was charged in connection with the shooting death of Derrick Ralston (hereinafter "the victim"). The victim's body was discovered in an alley in the vicinity of Bridge and Granite Streets in Philadelphia, near Cappy's Bar. At Appellant's

---

[*] Retired Senior Judge assigned to the Superior Court.

trial, two witnesses, Marcos Vinzenni and John Joseph Miller, testified to the events that occurred immediately prior to the victim's murder. Both Vinzenni and Miller were standing on the porch of Cappy's Bar in the early morning hours of October 19, 2007, when they saw three black males shouting at one white male in the middle of the street. The black males ordered the white male to strip off his clothes and two of the black males were pointing guns at the white male. Both Vinzenni and Miller recognized two of the black males, who they only knew by their nicknames "Killa" and "Stacks." Vinzenni and Miller testified that Killa and Stacks were the two men pointing guns at the victim. Miller testified that he heard the white male say "[w]e can work this out. I can take care of this. You don't have to do this."

Despite the white male's pleading, Killa, Stacks, and the other black male chased the naked white male down the street. Miller testified that approximately seven seconds later, he saw gun flashes and heard eight to nine gunshots. Miller reported that he saw the black males run back in front [of] the bar, where he witnessed Killa pick up the white male's clothes from the street and saw both Killa and Stacks holding guns. The three black men left the area. When Miller gave his statement to police, he identified Appellant as the man he knew as "Killa" from a photo array.

In another account, prosecution witness Vinzenni testified that he went back inside the bar after the black men chased the white male down the street. Vinzenni's friends followed him into the bar shortly thereafter and reported they heard gunshots. After making his statement to police, Vinzenni was shown photo arrays and also identified Appellant as the man he knew as "Killa." As noted above, police discovered the naked body of a white male in an alley between Bridge and Granite Streets. The white male, who was identified as the victim, was lying on his side and had suffered multiple gunshot wounds to the head and chest.

The victim's wife, Lauren Ralston, testified that a friend had introduced her and the victim to "Killa" in 2005 or 2006. She did not know Appellant by any other name than Killa until after the death of her husband. The day before the victim was murdered, Lauren discovered that the victim owed Appellant money after listening to four or five messages that Appellant left on the victim's voicemail. In this last message, Appellant told

- 2 -

the victim "don't worry about calling back because it's too late." When Lauren questioned the victim about the messages, the victim admitted that he owed Killa money, but promised he would pay him back. The victim's cell phone records showed that Appellant had called him over [forty] times that evening. Appearing nervous, the victim told Lauren that he was going out to get Killa some "weed," left the couple's home in Pottstown, and took Lauren's SUV to meet Appellant. The victim never came home that evening.

After awaking in the early morning hours of October 19, 2007 and discovering the victim was not home, Lauren attempted to call Appellant to find out where the victim had gone. Appellant denied ever meeting the victim in Pottstown and denied knowing the victim's whereabouts. After the victim was gone for several hours, Lauren began desperately searching for him, driving around her hometown and calling local hospitals and the police to report his disappearance. Lauren called Appellant again to ask him to help her look for the victim and talk to the local police. Appellant again denied knowing the victim's whereabouts.

After Lauren told Pottstown detectives about "Killa," the Pottstown detectives contacted Appellant in order to speak with him about the victim's disappearance. Appellant arranged to meet Pottstown detectives near his home in Philadelphia. Before Pottstown detectives met with Appellant, they were notified that the victim's body had been found near Appellant's home. Appellant told Pottstown detectives that he had last seen the victim two or three days earlier. Shortly thereafter, Philadelphia detectives arrived to speak with Appellant and transported him to their headquarters.

Appellant gave the Philadelphia homicide detectives a different account, admitting that he was present when the victim was killed, but claimed to have no part in his murder. After learning the victim was struggling financially, Appellant set up a meeting so that the victim could sell drugs for "Raheem." When the victim did not pay Raheem for the drugs he sold, Appellant claimed that Raheem and Stacks threatened him at gunpoint and made him call the victim repeatedly to meet up with them in Pottstown. When they picked the victim up, Raheem and Stacks forced Appellant and the victim to go with them to Philadelphia, where they ordered both Appellant and the victim out of the car,

ordered the victim to strip his clothes and shot the victim in a nearby alley. Appellant claims Raheem and Stacks forced him to go along with the abduction and warned him if he would "run his mouth" about the shooting, the same thing would happen to him.

When the Philadelphia police told Appellant that his version of the shooting was not true, Appellant again changed his story. Appellant claimed the victim had told Raheem that he would "set up" three people who owed him money for drugs to repay the victim's debt to Raheem. On the evening of October 18, 2007, Raheem, Stacks, and Appellant went to the victim's home to execute this plan. The victim began to make excuses and claimed he wanted to be home with his wife as they were having problems. However, the victim reluctantly agreed to drive his vehicle to show Raheem where the alleged targets of their plan lived, but his vehicle ran out of gas.

Subsequently, Raheem and Stacks forced the victim to ride with them and drove him to Philadelphia. Appellant claimed he had nothing to do with their forced abduction of the victim. Appellant alleged that Raheem gave him a P–38 9–mm weapon before ordering the victim out of the car onto the Philadelphia Street and then shooting him moments later. When driving Raheem home, Appellant claims that he tried to return the gun to Raheem, but Raheem told him to hold it. Once Raheem discovered that the victim's wife was calling Appellant to find out where the victim had gone, Appellant contends that Raheem took the firearm from Appellant and told him not to tell the police what happened.

After the victim's body was discovered and the police executed a search warrant for Appellant's home, they did not find any firearms, but did find Appellant's cell phone, from which police recovered a photograph of Appellant holding a Walther P–38 pistol. At trial, the Commonwealth presented Police Officer Louis Grandizio as a ballistics expert. Officer Grandizio testified that all the casings recovered from the murder scene came from one single .380 automatic weapon. After observing the bullets themselves, Officer Grandizio opined that the bullets used to kill the victim were not fired from a Walther P–38, which is a .9 mm pistol.

- 4 -

Prior to trial, Appellant filed a motion *in limine* seeking *inter alia* to preclude the Commonwealth from referring to him by his nickname "Killa" and to prevent the admission of the photograph of Appellant holding a firearm. The trial court denied Appellant's motion *in limine*. Appellant proceeded to trial for the murder of victim Derrick Ralston, after which the jury found Appellant guilty of second-degree murder, conspiracy, and carrying a firearm without a license. The trial court sentenced Appellant to an aggregate sentence of life imprisonment without the possibility of parole. . . .

(**Commonwealth v. Williams**, 58 A.3d 796, 797-99 (Pa. Super. 2012), (footnote and record citations omitted)).

On December 3, 2012, this Court affirmed Appellant's judgment of sentence. (**See id.** at 802). On June 7, 2013, the Pennsylvania Supreme Court denied leave to appeal. (**See Commonwealth v. Williams**, 68 A.3d 908 (Pa. 2013)).

On May 28, 2014, Appellant, through retained counsel, filed a timely PCRA petition. On November 25, 2014, Appellant, despite being represented by counsel, filed an amended *pro se* PCRA petition. On October 15, 2015, the Commonwealth filed a motion to dismiss the PCRA petition. Appellant filed a response on March 8, 2016. On March 23, 2016, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pennsylvania Rule of Criminal Procedure 907(1). Appellant filed a response on April 12, 2016. On April 22, 2016, the court dismissed Appellant's PCRA petition.

On April 25, 2016, Appellant filed a timely notice of appeal. On April 29, 2016, the PCRA court directed Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellant filed a

timely Rule 1925(b) statement on May 27, 2016. ***See id.*** On June 27, 2016, the PCRA court issued an opinion. ***See*** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review.[1]

A. Did Appellant present meritorious issues warranting relief to the PCRA court in his [PCRA] petition for relief?

B. Did the PCRA court below err in [dismissing] Appellant's PCRA petition without an evidentiary hearing and in denying him PCRA relief?

(Appellant's Brief, at 7) (unnecessary capitalization omitted).[2]

---

[1] We have reordered the issues in Appellant's brief.

[2] We direct Appellant's attention to Pa.R.A.P. 2119, which addresses the requirements for the argument section of appellate briefs and provides, in relevant part as follows:

**Rule 2119. Argument**

**(a) General Rule.** The argument shall be divided into as many parts as there are questions to be argued[.]

Pa.R.A.P. 2119(a). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002) (citations omitted). Here, Appellant's "Questions Presented" lists two questions. (Appellant's Brief, at 7). However, the argument portion of his brief regarding his first claim includes eleven separate topics not mentioned in his statement of the questions involved. (***See id.*** at 29-53). We remind Appellant that the Rules of Appellate Procedure provide that issues to be resolved must be included in the statement of questions involved or "fairly suggested" by it. Pa.R.A.P. 2116(a). While it is somewhat questionable that the eleven sub-issues were "fairly suggested" by Appellant's statement of the questions involved, and his combination of claims presents a confusing format, it does not hamper appellate review, and we shall proceed with our analysis.

Appellant appeals from the denial of his PCRA petition. Our standard of review is settled. We review the denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *See Commonwealth v. Faulk*, 21 A.3d 1196, 1199 (Pa. Super. 2011). To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). *See* 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Further,

> . . . a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion.
>
> > [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citations omitted).

As discussed above, Appellant asserts that he raised eleven issues meriting an evidentiary hearing. (*See* Appellant's brief, at 29-53). Our review of the brief demonstrates that, in actuality, Appellant's eleven claims are six layered claims of ineffective assistance of counsel and one purported challenge to the legality of Appellant's sentence. (*See id.*).

Appellant asserts that he received ineffective assistance of trial, post-trial, and appellate counsel. Counsel is presumed effective, and an appellant bears the burden to prove otherwise. *See Commonwealth v. McDermitt*, 66 A.3d 810, 813 (Pa. Super. 2013). The test for ineffective assistance of counsel is the same under both the United States and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Commonwealth v. Jones*, 815 A.2d 598, 611 (Pa. 2002). An appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001), *abrogated on other grounds by Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). "A failure to satisfy

any prong of the test for ineffectiveness will require rejection of the claim."

***Jones***, ***supra*** at 611 (citation omitted).

> Further,
>
> [w]here the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.
>
> Layered claims of ineffectiveness are not wholly distinct from the underlying claims[,] because proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.] In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

***Commonwealth v. Rykard***, 55 A.3d 1177, 1190 (Pa. Super. 2012), *appeal denied*, 64 A.3d 631 (Pa. 2013) (citations and quotation marks omitted).

In his first layered claim of ineffective assistance of counsel, Appellant argues that trial counsel was ineffective for failing to preserve an objection to the trial court's jury charge on felony murder, specifically on the requirement for a predicate offense. (***See*** Appellant's Brief, at 29-37). We disagree.

Initially, we note that the majority of Appellant's argument on this issue consists of complaints regarding the manner in which our courts require trial counsel to preserve challenges to a jury charge. (***See id.*** at 29-33). Appellant devotes approximately two pages to the actual issue and his argument is undeveloped.

After quoting both the trial court's initial charge on felony murder and a clarification issued by the trial court at defense counsel's request, (**see id.** at 33-34; N.T. Trial, 10/12/10, at 197-200), Appellant baldly states that the charge was in error and counsel was ineffective for failing to renew his objection to the charge. (**See** Appellant's Brief, at 34-35). At no point does Appellant specify what portion of the charges was erroneous, give an example of a correct charge on felony murder, or explain how preserving this issue for appeal would have changed the result. Thus, Appellant has failed to set forth the ineffectiveness analysis required by **Strickland**. **See Strickland**, **supra** at 687. Because Appellant has not established any of the three prongs, we must deem counsel's assistance constitutionally effective. **See Commonwealth v. Rolan**, 964 A.2d 398, 406 (Pa. Super. 2008) (holding that where appellant fails to address three prongs of ineffectiveness test, he does not meet his burden of proving ineffective assistance of counsel, and counsel is deemed constitutionally effective). Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.[3]

---

[3] Moreover, Appellant's claim is without merit. As the Commonwealth correctly states, the trial court's charge on felony murder is nearly identical to the Pennsylvania Suggested Standard Jury Instruction on felony murder. (**See** Commonwealth's Brief, at 12; N.T. Trial, 10/12/10, at 185-86); Pa.S.S.J.I. (Criminal) § 15.2502B. Our Supreme Court has held that a jury charge that closely tracks the language of the suggested standard jury charge is accurate, adequate, and sufficiently clear. **See Commonwealth**
*(Footnote Continued Next Page)*

Appellant's next claim of layered ineffective assistance of counsel is that trial counsel was ineffective for not renewing at trial his motion *in limine* to exclude the use of Appellant's nickname and a photograph of him holding a gun, thus waiving the claim on appeal. (*See* Appellant's Brief, at 38-43). Appellant's claim is without merit.

Initially, we note that Appellant litigated his motion prior to the start of trial and the trial court denied it. (*See* N.T. Motion Hearing, 10/04/10, at 4-9; 30-35). Appellant does not explain why he believes counsel had any basis for renewing this motion at trial. (*See* Appellant's Brief, at 38-43). Moreover, the gravamen of Appellant's contention is that trial counsel's failure to renew the motion at trial or litigate the issue in his post-sentence motion resulted in a waiver on appeal. (*See id.*). However, this is incorrect; in the published opinion on direct appeal, this Court reviewed the issue of the denial of Appellant's motion *in limine* on the merits, and concluded that the trial court's decision regarding the nickname and the photograph of Appellant holding a gun was correct. (*See Williams*, 58 A.3d at 800-01.). Thus, there is simply no factual basis to support Appellant's contention that trial counsel was ineffective for failing to renew the motion *in limine*, thus resulting in a waiver of the issue on appeal. Therefore, there is

*(Footnote Continued)* _____

*v. Prosdocimo*, 578 A.2d 1273, 1276-77 (Pa. 1990). Thus, there was no basis for counsel to object to the trial court's instruction on felony murder.

no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

Appellant's third layered claim of ineffective assistance of counsel is that trial counsel erred in not moving for a mistrial based on prosecutorial misconduct because of the Commonwealth's continued use of his nickname, "Killa," throughout the trial. (Appellant's Brief at 43; *see id.* at 43-47). We disagree.

In determining whether a prosecutor committed misconduct during opening and closing statements such as to justify the grant of a mistrial, our Supreme Court has stated:

> It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict.
>
> In considering appellant's claims of prosecutorial misconduct, we note that a prosecutor's comments are not evidence. . . .
>
> * * *
>
> Opening statements must be fair deductions from the evidence which the prosecutor expects will be presented at trial. . . .
>
> * * *
>
> . . . The complained-of comments must be considered in the context of the entire [closing argument] and allegations of prosecutorial misconduct will not warrant the grant of a new trial

- 12 -

unless they are such as to arouse the jury's emotions to such an extent that it is impossible for the jury to reach a verdict based on relevant evidence.

*Commonwealth v. Bronshtein*, 691 A.2d 907, 917-18 (Pa. 1997), *cert. denied*, 522 U.S. 936 (1997).

Appellant alleges that the Commonwealth used his nickname to suggest he was a person of bad character or prone to criminal behavior. (*See* Appellant's Brief, at 43-44). Initially, we note, as discussed above, that the trial court permitted the use of the nickname during trial and this Court affirmed this decision on appeal. Moreover, we specifically stated:

> Our review of the record shows that the Commonwealth did not use Appellant's nickname to suggest Appellant had a violent character, but used it to show that the witnesses recognized Appellant and could identify him as one of the perpetrators even though the witness did not know Appellant's real name.

(*Williams*, 58 A.3d at 800.).

Moreover, at no point in his argument on this issue does Appellant cite to the record to support his contention that the use of his nickname pervaded the testimony of the Commonwealth witnesses and infected the arguments of the prosecutor. (*See* Appellant's Brief, at 43-44).

In his previous argument regarding counsel's ineffectiveness for failing to renew the motion *in limine*, Appellant provides a single citation to the Commonwealth's opening statement. However, nothing in the opening statement demonstrates that the Commonwealth was using the nickname to inflame the jury or demonstrate that Appellant had a propensity for violence;

- 13 -

rather, in each instance, the Commonwealth was either explaining that the witness only knew Appellant by his nickname and/or was directly quoting statements made by the witness. (*See* N.T. Trial, 10/06/10, at 30-45). We remind counsel for Appellant that it is not this Court's responsibility to comb through the record seeking the factual underpinnings of his claim. *See Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this [C]ourt will not search every page to substantiate a party's incomplete argument") (citation omitted). Given Appellant's failure to cite to pertinent portions of the record in support of his contention that there was an arguable basis in law to move for a mistrial, and given that our review of the record fails to demonstrate any such basis, we will not fault trial counsel for failing to move for one. *See Commonwealth v. Ogrod*, 839 A.2d 294, 325 (Pa. 2003), *cert. denied*, 534 U.S. 1188 (2005) (declining to find counsel ineffective for failing to move for mistrial where claim lacked arguable merit). Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In his next layered claim of ineffective assistance of counsel, Appellant contends that trial counsel was ineffective for not having a coherent defense theory. (*See* Appellant's Brief, at 47-48). However, Appellant waived this claim.

Appellant's argument is undeveloped. Appellant fails to cite to the record to support his claim that there was a valid defense of duress and/or that Appellant was only involved in an attempt to collect a debt rather than kidnapping, robbery, or murder. (***See id.*** at 47). He further fails to cite to any pertinent case law, merely including a general cite to two cases with no explanation of their relevance. (***See id.***). He concludes with bald statements that trial counsel was ineffective. (***See id.*** at 47-48).

"Claims of ineffective assistance of counsel are not self-proving[.]" ***Commonwealth v. Spotz***, 896 A.2d 1191, 1250 (Pa. 2006) (citation omitted). Our Supreme Court has repeatedly refused to consider bald allegations of ineffectiveness, such as this one. ***See Commonwealth v. Thomas***, 744 A.2d 713, 716 (Pa. 2000) (declining to find counsel ineffective "where appellant fail[ed] to allege with specificity sufficient facts in support of his claim."). Thus, because Appellant has failed to argue his claim with sufficient specificity, we find it waived. Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this issue.

Appellant's next layered claim of ineffective assistance of counsel is that trial counsel was ineffective for failing to object to his illegal sentence for conspiracy. (***See*** Appellant's Brief, at 48-50). Again, Appellant has waived this claim.

While Appellant states that his claim is a challenge to counsel's ineffectiveness for not objecting to an illegal sentence, this is not an accurate characterization of his argument. (*See id.*). Appellant never discusses the sentence for conspiracy or attempts to explain why it is illegal. (*See id.*). Rather, in actuality, Appellant's contention is that counsel was ineffective for not challenging the sufficiency of the evidence underlying his conspiracy conviction. (*See id.*).

However, it is long settled that issues not raised in a PCRA petition or amended PCRA petition are waived on appeal. *See Commonwealth v. Lauro*, 819 A.2d 100, 103-04 (Pa. Super. 2003), *appeal denied*, 830 A.2d 975 (Pa. 2003) (waiving five issues not in original or amended PCRA petition). Also, as amended in 2007, Rule 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in Commonwealth v. Burton*, 973 A.2d 428, 430 (Pa. Super. 2009). Further, an appellant cannot raise a subject for the first time on appeal. *See Commonwealth v. Hanford*, 937 A.2d 1094, 1098 n.3 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008) (new legal theories cannot be raised for first time on appeal); Pa.R.A.P. 302(a). Here, Appellant did not claim that trial counsel was ineffective for failing to challenge the sufficiency of the evidence in his PCRA petition or his Rule

1925(b) statement, raising the issue for the first time in his brief on appeal. Thus, he waived his contention. **See Lord**, **supra** at 308; **Hanford**, **supra** at 1098 n.3; **Lauro**, **supra** at 103-04.

In his last layered claim of ineffective assistance of counsel, Appellant claims that counsel was ineffective for not moving to vacate his conviction for murder of the second degree in the absence of a conviction for a predicate act. (**See** Appellant's Brief, at 50-51). Appellant's claim is waived because Appellant neither cites to any pertinent law in support of his contention nor attempts to apply the **Strickland** test. **See Spotz**, **supra** at 1250; **Thomas**, **supra** at 716; **Rolan, supra** at 406. Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this issue.[4]

Thus, for the reasons discussed above, we find that all of Appellant's ineffective assistance of trial counsel claims are waived or meritless. Therefore, subsequent counsel cannot be deemed ineffective. **See Rykard**, **supra** at 1190. Thus, his layered claims must also fail.

Next, Appellant contends that his sentence of life without the possibility of parole imposed as a result of his conviction for murder of the second degree is violative of the Eighth and Fourteenth Amendments to the United

---

[4] In any event, the claim is meritless because it is settled that a defendant need not be convicted of the predicate offense. **See Commonwealth v. Miller**, 35 A.3d 1206, 1212-13 (Pa. 2012). We will not fault trial counsel for failing to file a meritless motion to vacate.

States Constitution because "he was not the shooter" and the sentence "is an arbitrary and capricious application of state power that deprives Appellant of his right to an individualized sentence." (Appellant's Brief, at 51). Appellant admits that he did not raise this issue below, but appears to maintain that challenges of a constitutional nature need not be preserved in the PCRA court. (*See id.* at 51). While this is not true in all cases of constitutional challenges, *see Commonwealth v. Lawrence*, 99 A.3d 116, 122-23 (Pa. Super. 2014), *appeal denied*, 114 A.3d 416 (Pa. 2015) (reaffirming that not all constitutional issues implicating sentencing are unwaivable challenges to legality of sentence), we have held that Eighth Amendment challenges need not be preserved below. *See Commonwealth v. Brown*, 71 A.3d 1009, 1015-16 (Pa. Super. 2013), *appeal denied*, 77 A.3d 635 (Pa. 2013). Nonetheless, while Appellant did not need to raise this claim in the PCRA court, we find that it is waived because of Appellant's utter failure to develop his argument.

Appellant's argument on this issue is in contravention of Pennsylvania Rule of Appellate Procedure 2119. He fails to provide pertinent law or discussion of this issue, or any citation to the certified record. (*See* Appellant's Brief, at 51-53); *see also* Pa.R.A.P. 2119(a)-(c), (e). Appellant provides no evidentiary support for his conclusory statement that he was not the shooter. (*See* Appellant's Brief, at 51). Further the only legal support he provides for his claim that his sentence violates the Eighth Amendment is

a brief citation to the United States Supreme Court's decision in ***Tilson v. Arizona***, 481 U.S. 137 (1987). The issue in ***Tilson*** was whether the Arizona Supreme Court used the correct standard of review[5] in sentencing two defendants to death where they neither intended to kill the victim nor inflicted the fatal shot, but rather were convicted under the felony-murder law. ***See Tilson***, ***supra*** at 138. Appellant does not attempt to explain how ***Tilson*** is in any way applicable to the instant matter. Thus, Appellant has not satisfied his burden, and hence we deem this issue waived. ***See Commonwealth v. Murchinson***, 899 A.2d 1159, 1162 (Pa. Super. 2006) (finding claim waived where appellant provided only boilerplated law and conclusion); ***see also*** Pa.R.A.P. 2101, 2119(a)-(c), (e).

In his final claim, Appellant argues that the PCRA court erred in dismissing his petition without an evidentiary hearing. (***See*** Appellant's Brief, at 24-28). The Pennsylvania Rules of Criminal Procedure provide the PCRA court with the discretion to dismiss a PCRA petition without an evidentiary hearing if it is patently without merit. ***See*** Pa.R.Crim.P. 907. Because Appellant's ineffective assistance of counsel and sentencing claims lack merit, he is not entitled to an evidentiary hearing. ***See Miller***, ***supra*** at 992.

---

[5] While holding that the Arizona Supreme Court applied the wrong standard of review, the ***Tilson*** court did not foreclose the application of the death penalty to accomplices convicted under the felony-murder rule. ***See Tilson***, ***supra*** at 158.

Accordingly, for the reasons discussed above, we affirm the PCRA court's dismissal of Appellant's PCRA petition without a hearing.

Order affirmed.

Judge Solano joins the Memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2017